

**SIGNED this 27 day of August, 2009.**

_____
**R. Thomas Stinnett
UNITED STATES BANKRUPTCY JUDGE**

_____


UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
WINCHESTER DIVISION

| | |
|---|---|
| In re: | No. 08-13773 |
| | Chapter 7 |
| JIMMY ROSS CROWNOVER, | |
| Debtor; | |
| LARRY TOMLIN | |
| REBEKAH TOMLIN, | |
| Plaintiffs, | |
| v. | |
| | Adversary Proceeding |
| | No. 08-1154 |
| JIMMY ROSS CROWNOVER, | |
| Defendant. | |

**MEMORANDUM**

This memorandum deals with a motion for summary judgment filed by the plaintiffs. The plaintiffs contracted with the debtor to build a home, but the debtor never completed it. After contracting

with another builder to complete the home, the plaintiffs sued the debtor in state court and obtained a judgment in the amount of $234,030 in actual damages, $468,060 for willful violation of the Tennessee Consumer Protection Act, and $67,650.68 in attorney's fees. The debtor then filed for bankruptcy under Chapter 7 of the bankruptcy code. The plaintiffs responded with a complaint asserting that the judgment debts cannot be discharged in the debtor's bankruptcy case. The plaintiffs' motion for summary judgment relies on the effect of the state court judgment under the doctrines of *res judicata* and collateral estoppel. According to the debtors, the state court judgment establishes that the judgment debts come within one or two exceptions from discharge – § 523(a)(2) or (6) of the bankruptcy code. 11 U.S.C. § 523(a)(2), (6).

The motion for summary judgment requires the court to view the evidence in the light most favorable to the debtor. The court can grant summary judgment only if it determines that there is no genuine issue as to any material fact, and based on the undisputed facts, the law entitles the plaintiffs to judgment in their favor. Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56(c); *Highland Capital, Inc. v. Franklin Nat. Bank*, 350 F.3d 558, 564 (6th Cir. 2003). The plaintiffs have the burden of proving there is no genuine issue of material fact to be decided by a trial. The plaintiffs have submitted the state court judgment as evidence that the judgment debts are excepted from discharge under 523(a)(2)(A) or 523(a)(6) of the bankruptcy code.

The copy of the judgment filed by the plaintiffs is not a certified copy, but the debtor has not disputed that it is a correct copy and has not objected to its use by the plaintiffs. *Wiley v. United States*, 20 F.3d 222 (6th Cir. 1994).

The full faith and credit statute provides that "judicial proceedings [of any State] . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State." 28 U.S.C. § 1738. In other words, this court must give the state court judgment the same effect it would have in a Tennessee state court under the Tennessee law of *res judicata* and collateral estoppel. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984).

The doctrine of *res judicata* deals with the effect of an earlier judgment on a *claim* asserted by a party in later litigation. *Hutcherson v. Lauderdale County, Tennessee*, 326 F.3d 747 (6th Cir. 2003). The distinction between *res judicata* and collateral estoppel comes from the distinction between a claim and the facts needed to prove the claim (the elements of the claim). For example, the plaintiffs can rely on *res judicata* as establishing their claim that the debtor violated the Tennessee Consumer Protection Act.

Defense counsel correctly points out that the federal courts have exclusive jurisdiction over claims that a debt is excepted from discharge under § 523(a)(2), (4) or (6) of the bankruptcy code. 11 U.S.C. § 523(c); Fed. R. Bankr. P. 4007. Section 523(a)(3) creates an exception to exclusive federal jurisdiction for a creditor who did not have notice or knowledge of the debtor's bankruptcy case in time to file a complaint before the deadline. 11 U.S.C. § 523(a)(3)(B). Since the state court entered the judgment against the debtor before his bankruptcy, the state court did not have jurisdiction under § 523(a)(3).

The judgment of a state court generally will not be *res judicata* as to a claim that was within the exclusive jurisdiction of the federal courts. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). That general rule should apply in this case. *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979); *Metcalfe v. Waters (In re Waters)*, 239 B.R. 893 (Bankr. W. D. Tenn. 1999). The plaintiffs' dischargeability claims did not even exist at the time of the state court proceedings because the debtor had not yet filed bankruptcy. The elements of the state law claims established by the judgment do not exactly overlap the elements of a successful dischargeability claim under either § 523(a)(2)(A) or §523(a)(6). In this regard, the state court's judgment says nothing to indicate that the question of discharge in bankruptcy was part of the state court lawsuit. Finally, the Tennessee law of *res judicata* would not treat the judgment as a decision that the judgment debts are excepted from discharge under § 523(a)(2) or (6). *Creech v. Addington*, 281 S.W.3d 362, 381-383 (Tenn. 2009). For these reasons, the court concludes that the state court

judgment is not *res judicata* as to the plaintiffs' claims under 523(a)(2)(A) or 523(a)(6).[1]

The court has already mentioned that the judgment is *res judicata* as to the debtor's liability on the claims for which the state court granted judgment. To grant judgment on those claims, the state court decided certain facts or issues against the debtor. This brings the court to the Tennessee law of collateral estoppel.

Collateral estoppel deals with particular facts or issues that were decided in the earlier litigation even though it did not involve the same claims as the current litigation. *Massengill v. Scott*, 738 S.W.2d 629, 631-632 (Tenn. 1987). Collateral estoppel applies to a party's contentions in a later lawsuit when: (1) the party or someone in privity with it was a party to an earlier legal proceeding; (2) the identical issue came up in the earlier proceeding; (3) the party or the person in privity with it had a full and fair opportunity to litigate the issue in the earlier proceeding; (4) the issue was actually litigated and decided on the merits in the earlier proceeding; (5) the court entered a final judgment in the earlier proceeding. *Patton v. Estate of Upchurch*, 242 S.W.2d 781, 787 (Tenn. Ct. App. 2007).

Collateral estoppel principles apply to dischargeability proceedings. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 658, 112 L.Ed.2d 755 (1991). When a state court has determined factual issues using standards identical to those in the dischargeability proceeding, collateral estoppel bars re-litigation of those issues in bankruptcy court. *Spilman v. Harley*, 656 F.2d 224, 227–228 (6th Cir. 1981). Therefore, this court must compare the issues decided by the state court to the issues under 523(a)(2) and (a)(6) of the bankruptcy code.

Plaintiffs' collateral estoppel argument hinges on the findings of the state court. The judgment of the state court is set out below:

> This case involves a claim for damages for the faulty construction of a home and was tried March 18, 2008. The defendants did not appear. The court heard the testimony

---

[1] Different issues are raised by a pre-bankruptcy agreed judgment stating that the judgment debt is not dischargeable under § 523(a)(2), (4) or (6). 11 U.S.C. § 524(a), (c); *see Simmons Capital Advisors, Ltd. v. Bachinski (In re Bachinski)*, 393 B.R. 522 (Bankr. S. D. Ohio 2008); *Hayhoe v. Cole (In re Cole)*, 226 B.R. 647 (9th Cir. B.A.P. 1998); *Archer v. Warner*, 538 U.S. 314, 123 S.Ct. 1462, 155 L.Ed.2d 454 (2003); *Matsushita Elec. Ind. Co. v. Epstein*, 516 U.S. 367, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996); *but see Federal Deposit Ins. Corp. v. Daily*, 47 F.3d 365 (9th Cir. 1995).

of Larry Tomlin and his expert, Robert Hugueley.

Facts

Plaintiffs Larry and Rebekah Tomlin . . . entered an agreement with James Crownover . . . and Service Pro Maintenance & Construction, LLC . . . on November 15, 2003. Crownover and Service Pro were to manage and construct the Tomlins' home for a fixed price of $286,160.20, hereinafter referred to as the "First Agreement"). (Service Pro's assets were later transferred to defendant Ross Services, LLC.) To induce the Tomlins to enter the First Agreement Crownover made repeated promises and representations to the Tomlins as to his own abilities and Service Pro's abilities to construct the home in a workmanlike and timely manner. Contrary to those promises and representations, Crownover and Service Pro had constructed no homes when the First Agreement was executed. Service Pro's Tennessee contractor license was limited to projects of no more than $250,000, some $36,000 less than the contract with the Tomlins.

Crownover set up the draw schedule so as to significantly "front-load" the payments received under the First Agreement. Effectively, Crownover and Service Pro set up the payment schedule so as to be substantially overpaid for the initial phases of the work, the foundation and framing. This deceptive billing schedule permitted Crownover to overcharge for the initial phase then leave the job when there was no way he could complete the work for the remaining sums.

Crownover and his business entities failed to live up to the terms of the First Agreement. In an attempt to remedy numerous delays and problems with construction amicably, the Tomlins entered a subsequent agreement with Crownover and Service Pro on May 11, 2004 (hereinafter referred to as the "Second Agreement"). Crownover and Service Pro once again failed to meet the terms and conditions of the Second Agreement to complete the home for a total fixed price of $61,043.99. Both the First Agreement and the Second Agreement were fixed price contracts in which Crownover promised to build the Tomlins' home for a definite fixed price. There was actually substantial overlap in the cost figures between the two contracts.

After Crownover and Service Pro were unable to comply with the agreements, Crownover told the Tomlins he would not complete the work unless they agreed to modify the previous fixed price arrangements into a cost plus arrangement. The Tomlins refused to make this modification, since Crownover had previously failed to comply with the fixed price contracts. Crownover and Service Pro refused to complete the work under the Second Agreement. The Tomlins have paid Crownover a total of over $291,000.

Because Crownover and Service Pro refused to perform any further work, the Tomlins were forced to hire another contractor to complete the work that Crownover and Service Pro should have performed as part of his fixed price contracts. Numerous and substantial defects existed in the structure as a result of the work by Crownover and Service Pro. The Tomlins ultimately paid $422,256.49 for the home that Crownover and Service Pro originally contracted to build for $268,160.20.

The Tomlins advance numerous theories for relief. The court finds the Tomlins are entitled to judgment based on the grounds set out hereinafter.

## Law and Reasoning

### Breach of contract

Crownover and Service Pro breached the contracts by failing to properly construct the Tomlins' residence at its fixed price and specifications. . . . Crownover's and Service Pro's work failed to meet local standards, was shoddy and defective and that Mr. Crownover's conduct was improper and unprofessional. . . .

### Breach of Warranty

Here, both agreements between the parties are silent as to any warranty. When the written contract for a new home is silent as to any warranty, then a warranty is implied that the residence [will] be constructed in a good and workmanlike manner, free from defects, and otherwise meeting the standard of workmanlike quality prevailing in the area at the time of construction. . . . Crownover and Service Pro breached this Tennessee common law implied warranty . . . .

An implied covenant of good faith and fair dealing in the performance of contracts is also recognized in the state of Tennessee. . . . Clearly, the Tomlins intended to pay the amount quoted by Crownover for construction of their residence in a workmanlike manner and dealt in good faith with Crownover and Service Pro. Crownover and Service Pro performed woefully and failed to meet the terms of both Agreements and it is clear to this court that they never intended to deal fairly and in good faith with the Tomlins. By their actions, these defendants have violated this warranty.

### Consumer Protection Act

Crownover's gross misrepresentation as to his abilities and his deceitful words and actions violated the Tennessee consumer Protection Act (hereinafter "TCPA"). . . .

The TCPA applies to misrepresentations by homebuilders concerning the construction of a new residence. . . . This court finds Crownover and Service Pro guilty of unfair and deceptive acts and practices in dealing with the Tomlins. The Tomlins are entitled to recover actual damages under the TCPA since the necessary elements of a TCPA claim are satisfied. The TCPA also provides for the recovery of treble damages upon a finding that the seller's "unfair or deceptive act or practice was a willful and knowing violation" of the TCPA. T.C.A. § 47-18-109(a)(3). Clearly the false claims and promises and deceptive and fraudulent acts of Crownover and Service Pro in misleading the Tomlins about skills and abilities and "front-loading" the construction draws were willfully and knowingly made and the Tomlins are entitled to treble damages as well as their reasonable attorney's fees and costs.

### Summary and Order

The Tomlins proved actual damages of $234,030 for costs of repair of their home and for double payments made and are entitled to judgment jointly and severally against all defendants for that amount on their theories of breach of contract, breach of implied warranties of good workmanship, and of good faith and fair dealing under the TCPA. The Tomlins are further entitled to a joint and several judgment against all defendants of $468,060 for a willful and knowing violation of the TCPA. The judgment for actual damages under the various theories and the judgment for a willful and knowing violation of the TCPA totals $702,090. In addition to this sum, the Tomlins are entitled to a

judgment for attorneys' fees of $67,650.68 and the costs of this cause. . . .

In their motion for summary judgment, the plaintiffs initially rely on the discharge exception for debts arising from "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). In the alternative, the plaintiffs rely on the discharge exception for "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).

Mere breach of contract does not come within either of these discharge exceptions. The state court's findings of fact and the breach of contract portion of the judgment do not detail additional wrongdoing by the debtor that would make either discharge exception apply to the claim for breach of contract. *Spring Works, Inc. v. Sarff (In re Sarff)*, 242 B.R. 620 (6th Cir, B.A.P. 2000); *Bohannon v. Horton (In re Horton)*, 372 B.R. 349 (Bankr. W. D. Ky. 2007).

Likewise, mere breach of warranty does not come within either of the discharge exceptions. *Heinold Commodities & Securities, Inc. v. Hunt (In re Hunt)*, 30 B.R. 425 (M. D. Tenn. 1983). The breach of warranty section of the judgment goes on to say that the debtor breached the covenant of good faith and fair dealing. Tennessee law does not provide an independent cause of action for breach of the covenant of good faith and fair dealing when the other party has performed the contract according to its terms. *Lyons v. Farmers Ins. Exch.*, 26 S.W.3d 888 (Tenn. Ct. App. 2000). For the purpose of ruling on the plaintiffs' summary judgment motion, the court must determine how the judgment as to breach of the covenant relates to the discharge exceptions.

As to breach of the covenant, the judgment includes the statement that the debtor "never intended to deal fairly and in good faith" with the plaintiffs. This statement could relate to false representations, false pretenses, or actual fraud used by the debtor to induce the plaintiffs to enter into the contracts, including the plaintiffs' agreement to the front-loading of the progress payments. The theory could be that the debtor breached the covenant by fraudulently inducing the plaintiffs to enter

into the contracts.[2]

This theory does not make sense under Tennessee law. The covenant of good faith and fair dealing concerns performance of the contract – not formation of the contract. The covenant comes into existence when the contract comes into existence. *Wallace v. National Bank of Commerce*, 938 S.W.2d 684 (Tenn. 1996); *Lyons v. Farmers Ins. Exch.*, 26 S.W.3d 888 (Tenn. Ct. App. 2000); *Elliott v. Elliott*, 149 S.W.3d 77 (Tenn. Ct. App. 2004). The state court probably meant something more obvious: during performance of the contracts the debtor did not deal with the plaintiffs fairly and in good faith as required by the implied covenant.

Proving a case under § 523(a)(2)(A) requires proof of a course of events. *In re Rembert*, 141 F.3d 277, 280-81 (6th Cir. 1998). The statement that the debtor did not deal with the plaintiffs fairly and in good faith during the performance of the contract does not add specific events in any particular sequence that might bring the breach of warranty claim within § 523(a)(2)(A). As a description of wrongdoing by the debtor, the statement is too vague to bring the breach of contract or the breach of warranty claims under § 523(a)(2)(A).

To prove willful and malicious injury under § 523(a)(6), the creditor must prove that the debtor intentionally committed the acts leading to the creditor's injury, and the debtor intended those acts to cause injury to the creditor. *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 977, 140 L.Ed. 2d 90 (1998). Intent to cause harm can be proved by evidence that the debtor knew the harm was substantially certain to follow. *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, note 10 (6th Cir. 1999). The judgment's statement that the debtor did not deal with the plaintiffs fairly and in good faith during the performance of the contract could have been intended to mean that the debtor intentionally breached the contract. A debtor's intentional breach of a contract does not prove willful and malicious injury because it proves only the intent to commit the act that caused the injury and not the intent to cause the injury. *Barnett v. Rich (In re Rich)*, 401 B.R. 281 (Bankr. S. D. Ohio 2009). For the purposes

---

[2] A false promise qualifies as a false representation; when a contractor enters into a contract without the intent to perform, that is a false promise, and the contractor's debt for damages resulting from failure to perform will be excepted from discharge under § 523(a)(2). *McKee Builders, Inc. v. Knight (In re Knight)*, 377 B.R. 590 (Bankr. E. D. Tenn. 2007).

of summary judgment, the sentence in question is too vague to qualify as a finding that the debtor intentionally breached the contract. It is even less clear as an attempt to establish the intent to cause harm that is required to prove dischargeability under § 523(a)(6). Thus, it is not sufficient to bring the breach of contract or breach of warranty claims under § 523(a)(6).

Indeed, the state court's decisions on breach of contract and breach of warranty appear to have been crafted to avoid basing them on intentional wrongdoing by the debtor. The court understands that approach. If the court in a civil action can grant judgment against the defendant on some claims, without finding intentional wrongdoing by the defendant, that is a practical or conservative approach for the plaintiffs' benefit, especially if the defendant appeals. The judgment on those claims will be based on a smaller set of facts and usually will involve fewer or less complicated legal issues. In summary, the judgment does not establish the facts needed to prove that the claims for breach of contract and breach of warranty must be excepted from discharge under § 523(a)(2)(A) or (a)(6). The court turns then to the state court's decision that the debtor violated the Tennessee Consumer Protection Act – the TCPA.

The state court's ruling that the debtor violated the TCPA includes language similar to the language set forth in 11 U.S.C. § 523(a)(2)(A) and (a)(6). The question is whether the state court's judgment actually decided issues *identical* to the elements required under one of these discharge exceptions.

To prove a case under § 523(a)(2)(A), the creditor must establish four elements by a preponderance of the evidence: (1)(a) the debtor obtained money by means of a materially false representation; (1)(b) when the debtor made the representation, the debtor knew it was false or recklessly disregarded whether it was true or false; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.[3] *In re Rembert*, 141 F.3d 277, 280-81 (6th Cir. 1998); *In re McLaren*, 3 F.3d 958, 961 (6th Cir.

---

[3] The statute covers obtaining things of value other than money. The statute also expressly covers silent or more complex falsehoods – false pretense and actual fraud. 11 U.S.C. § 523(a)(2)(A).

1993); *Grogan v. Garner*, 111 S.Ct. 654 (preponderance of evidence standard). Furthermore, the courts generally construe the exceptions to discharge strictly against the creditor and liberally in favor of the debtor. *Rembert*, 141 F.3d 277, 281; *In re Ward*, 857 F.2d 1082, 1083 (6th Cir. 1988).

Plaintiffs contend that the state court ruled against the debtor on claims of common law fraud, including promissory fraud (a false promise). On the contrary, the state court judgment does not mention common law fraud as a ground for liability. The state court only found the debtor liable for breach of contract, breach of warranty, and violations of the TCPA. The court has already concluded that the state court's decisions as to breach of contract and breach of warranty do not cover the issues required to prove a case under § 523(a)(2)(A) or (a)(6). As a result, the plaintiff's collateral estoppel argument depends on the state court's decision that the debtor violated the TCPA.

The state court specifically found that the debtor "willfully and knowingly" engaged in "false claims and promises and deceptive and fraudulent acts." Under the TCPA, "knowingly" is defined as "actual awareness of falsity." *See* Tenn. Code Ann. § 47-18-103(6). Thus, the state court's ruling establishes that the debtor made materially false representations to the plaintiffs when he knew the representations were false. As such, the first element required by § 523(a)(2)(A) is satisfied.

The second element of § 523(a)(2)(A) is actual intent to deceive the creditor. Under the TCPA, the word "willful" is used interchangeably with the word "intentional." *Akers v. Bonifasi*, 629 F. Supp. 1212, 1223 (M.D. Tenn. 1984). In effect, the state court's ruling that the debtor willfully engaged in deceptive acts toward the plaintiffs indicates a finding that the debtor intentionally deceived the plaintiffs. Accordingly, the first two elements under § 523(a)(2) were decided by the state court.

The state court's findings of fact agree with its conclusions on these two elements of § 523(a)(2)(A). The state court concluded that "the false claims and promises and deceptive and fraudulent acts of Crownover and Service Pro in misleading the Tomlins about skills and abilities and "front-loading" the construction draws were willfully and knowingly made and the Tomlins are entitled to treble damages as well as their reasonable attorney's fees and costs."

However, § 523(a)(2)(A) also requires that the plaintiffs must have justifiably relied on

the misrepresentations made by the debtor and the plaintiffs' injury must have resulted from their justifiable reliance. *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). The TCPA does not explicitly require proof of reliance on a misrepresentation to prove a violation of the act. Furthermore, nothing in the state court judgment indicates that the issue of justifiable reliance was raised, much less decided. Instead, the state court's judgment focused on the deceptive and willful nature of the debtor's misrepresentations and simply did not address the issue of reliance. The plaintiffs may have justifiably relied on the debtor's misrepresentations, but the judgment does not prove that the state court decided the issue in the plaintiffs' favor. Since the issue of reliance was not clearly decided by the judgment, the judgment also did not decide that the plaintiffs' justifiable reliance was the proximate cause of their injury. Thus, the judgment does not prove two of the four elements required to except the judgment debts from discharge under § 523(a)(2)(A). The plaintiffs' motion for summary judgment under § 523(a)(2) must be denied.

The portion of the judgment dealing with breach of the covenant of good faith and fair dealing vaguely agrees with the state court's decision that the debtor violated the TCPA by intentionally misleading the plaintiffs. But the language of the judgment as to breach of the covenant says nothing on the questions of reliance and proximate cause.

The plaintiffs also rely on the discharge exception for debts based on "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. 523(a)(6). From the plain language of the statute, the exception will not apply unless the injury caused by the debtor was both willful *and* malicious. *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 463 (6th Cir. 1999). Furthermore, the United States Supreme Court held that willful behavior involves "a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 977, 140 L.Ed. 2d 90 (1998).

Although the plaintiffs would have the court believe otherwise, a mere lack of justification or excuse for a debtor's actions is not enough to prove willful and malicious conduct. *Markowitz*, 190 F.3d 455, note 10, *citing Roumeliotis v. Popa (In re Popa)*, 140 F.3d 317 (1st Cir. 1998). Willfulness

cannot be proved by showing that the debtor should have known his decisions and actions put the plaintiffs at risk. *Markowitz*, 190 F.3d 455, note 10. To prove willfulness, a creditor must show by a preponderance of the evidence that the debtor intended his actions, *and* the debtor either intended his actions to cause injury to the creditor or the debtor believed that injury to the creditor was substantially certain to follow. *Markowitz*, 190 F.3d 455, 464–465. If the creditor proves willfulness, then malice is necessarily implied. The intent to cause injury to another person or another person's property is malicious *unless* the debtor had a just cause or excuse for acting with the intent to cause the injury. The classic example of a just cause or excuse is self defense. It can be a just cause or excuse that prevents liability and disproves malice if not willfulness under § 523(a)(6). *Imperial Premium Finance, Inc. v. Bartlett (In re Bartlett)*, Adv. Proc. No. 05-1015, Bankr. Case No. 04-14773 (Bankr. E. D. Tenn. July 22, 2005).[4] In this understanding of § 523(a)(6), the lack of a just cause or excuse is evidence of willfulness and malice but not complete proof.

The state court awarded treble damages under the finding that the debtor willfully violated the TCPA by engaging in "unfair or deceptive acts." This finding does not satisfy the standard of willful and malicious conduct required under § 523(a)(6). The court has already pointed out that "willful" under the TCPA means intentional. Thus, the state court's judgment finds that the debtor intended to commit the acts that caused the harm to the plaintiffs. That is not the same as a finding that the debtor intended his actions to bring about the harm suffered by the plaintiffs. The plaintiffs might argue that the debtor must have believed the harm was substantially certain to result from his actions. But, the state court's judgment does not clearly decide this issue. Thus, an essential element of the § 523(a)(6) exception was not clearly decided by the state court's judgment. Under the law of collateral estoppel, the judgment does not establish all the facts or issues needed to prove the judgment debts come within the discharge exception in § 523(a)(6). The plaintiffs' argument under § 523(a)(6) fails because they erroneously equate "willful and malicious" in § 523(a)(6) with "unfair or deceptive" in the state court's judgment.

---

[4] http://www.tneb.uscourts.gov/opinions/stinnett/07-22-2005;Imperial_v_Bartlett.pdf

The state court also concluded that the debtor breached the covenant of good faith and fair dealing; specifically, the debtor did not deal with the plaintiffs fairly and in good faith during performance of the contracts. This conclusion is too vague to prove the debtor's intent to cause harm as required by § 523(a)(6). The state court's findings of fact and rulings on breach of contract and breach of warranty also do not aid the plaintiffs in proving willfulness or malice.

Finally, the plaintiffs' argument focuses on the findings by the state court that the debtor did not complete the work in a workmanlike fashion and the final product exhibited several defects. At best, these findings establish only that the debtor intentionally performed at a level below the accepted standard for contractors. Such poor performance is sufficient to establish "unfair or deceptive" acts under the TCPA. According to the Supreme Court, however, a debtor's actions are not necessarily willful and malicious simply because they fall far below professional standards. Intentionally failing to perform at an acceptable, professional level is not equivalent to intending to cause injury or believing it is substantially certain to follow. *Markowitz*, 190 F.3d 455, 464, *citing Kawaauhau v. Geiger*, 118 S.Ct.976–977. The state court judgment simply did not address whether the debtor's violation of the TCPA went beyond intentional, unfair or deceptive practices to the point of being willful and malicious within the meaning of § 523(a)(6). Under the law of collateral estoppel, the state judgment does not establish that the judgment debts come within the discharge exception in § 523(a)(6).

For the reasons set forth above, the court will enter an order granting the plaintiffs a partial summary judgment as to the issues established by the state court judgment under the law of collateral estoppel and denying the motion in all other respects.

# # #